(97 South. 16)

No. 25471.

### LORIO v. GLADNEY.

(April 2, 1923. Rehearing Denied April 30, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Judgment** ⊜818(2)—**Proceeding in rem could not result in personal judgment entitled to full faith and credit without voluntary appearance.**

Where proceeding in Mississippi court to enforce lien against pledged property was quasi in rem, it could not result in valid and jurisdictional decree in personam within full faith and credit clause of the federal Constitution, in absence of voluntary appearance by defendants.

2. **Judgment** ⊜822(3)—**Foreign judgment held not res judicata on issues which could not be determined without defendants' voluntary appearance.**

In proceeding quasi in rem in another state against property pledged by married woman or her husband, questions as to her ownership of property and right to pledge it for her husband's debt and her right to recover its value from the pledgee could not be determined without voluntary appearance of the husband and wife, and hence the judgment was not res judicata on those questions.

3. **Husband and wife** ⊜146½—**Law prohibiting pledge for husband's debt cannot be avoided by taking property into another state and foreclosing pledge there.**

Where wife's pledge of property to secure husband's obligations under lease of Mississippi property was made in Louisiana, the pledgee could not, by carrying the property into Mississippi and foreclosing the pledge there, defeat the operation of the Louisiana law striking

153 LA.—32

with nullity the wife's pledge to secure her husband's debt.

4. **Domicile** ⊜5—**Wife's domicile is that of husband.**

Wife's domicile is the domicile of her husband, and if the husband was domiciled in Louisiana the wife was also domiciled there.

5. **Domicile** ⊜2—**Residence is important element.**

While residence of itself does not constitute domicile, it is one of the important elements in determining the question of domicile.

6. **Domicile** ⊜4(2)—**Forfeited by leaving country without intention of return.**

Where persons residing for some years in Mexico left there with no intention of ever returning and moved to New Orleans, the husband's former domicile, they forfeited any domicile they had in Mexico, and, as no one is deemed without a domicile, were domiciled in New Orleans, not having acquired any other domicile.

7. **Domicile** ⊜8—**Burden on one claiming change of domicile.**

The burden of proving change of domicile from Louisiana to Mexico was on defendant, claiming that the laws of Louisiana were inapplicable to married woman's pledge because she and her husband were not domiciled in Louisiana.

8. **Husband and wife** ⊜171(1)—**Pledge by wife to secure husband's debt is void.**

Under the law prohibiting married woman from binding herself and her property for her husband's debt, pledge by married woman to secure her husband's debts or obligations was illegal, void, and of no effect.

*Dawkins, J., dissenting.*

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Suit by Mrs. I. P. Lorio against E. L. Gladney. From a judgment for plaintiff, defendant appeals. Affirmed.

Miller, Miller & Fletchinger, of New Orleans, and E. L. Gladney, Jr., for appellant.

Borah, Himel, Bloch & Borah, of Franklin, for appellee.

ROGERS, J. Plaintiff, in this suit, seeks to recover from defendant certain jewelry,

her separate property, pledged by her to secure the performance of the obligations of her husband as the lessor in a contract entered into with defendant for the lease of the premises known as the "Glad Oak Hotel," situated near the city of Gulfport, in the state of Mississippi.

Defendant's preliminary defense was urged by way of exceptions of lis pendens and of no right or cause of action. Before submission of these pleas to the lower court, defendant withdrew the latter exception from its consideration, submitting the issue solely upon the exception of lis pendens, which was sustained.

On appeal taken to this court from that judgment, defendant again interposed the exception of no right or cause of action, grounding the plea upon the provisions of Act No. 94 of 1916.

The exception of lis pendens was based upon a proceeding which had been instituted by the present defendant in the chancery court of Harrison county, in the state of Mississippi, to procure the enforcement of his lien upon the jewelry pledged by the present plaintiff to secure the performance of the obligations of the lease by her husband.

This court overruled the exceptions and set aside the judgment appealed from, holding that the suit in Mississippi was not between the same parties for the same object' and growing out of the same cause of action before another court of concurrent jurisdiction, and that the provisions of Act No. 94 of 1916 do not remove the incapacity of a wife to mortgage or pledge her separate property for a debt or obligation of her husband, but merely permits a married woman to do without the authorization of her husband what she was theretofore capable of doing with his authorization. The case was remanded for further proceedings not inconsistent with the opinion. Lorio v. Gladney, 147 La. 930, 86 South. 365.

Pending the disposition of the exceptions referred to, the suit in Mississippi resulted in a decree in favor of the plaintiff therein, defendant in the present litigation, and upon the remand of the case said defendant interposed by way of further exception a plea of res judicata based upon the judgment rendered in Mississippi. This exception having been overruled, with reservation thereof, defendant answered, denying that the domicile of the plaintiff was in Louisiana, as alleged; admitting the execution of the lease and the pledge of the jewelry to secure the performance of the obligations of the lessee; averring that the plaintiff had informed him at the time that she had given her jewelry to her husband to assist him in making a success of their common venture in leasing, for the purpose of operating the hotel as a means of livelihood and establishing a home for themselves on the Mississippi coast, since both plaintiff and her husband had only recently arrived in New Orleans from Mexico, where they claim to have resided for fifteen years; averring that the negotiations leading up to the execution of the lease were conducted upon the site of the hotel property in Mississippi, where the terms and conditions were agreed upon, and where it was understood the lease was to be performed; averring that all the papers were prepared by defendant's attorney in Mississippi and were thereafter brought or sent to New Orleans, where, as a matter of convenience simply to the parties concerned, the lease was signed; specially denying that the accidental execution of the instrument in New Orleans had the effect of making it a Louisiana contract or that the parties intended it should be so construed, rather than as a Mississippi contract, where it was to be entirely performed; and pleading that under the laws of Mississippi, there was no marital incapacity prohibiting the wife to bind herself for her husband's debt. Defendant further answered that immediately after the ex-

ecution of the lease, he took the jewelry, and all of the papers appertaining to the transaction, with him to Mississippi, where the contract was to be performed, and where was situated the hotel property, and where he then had a residence and place of business; that, some months after taking possession, plaintiff's husband breached his contract of lease and left, owing respondent a sum in excess of $600; that he then brought suit in the chancery court of Harrison county, Miss., against both the plaintiff and her husband to foreclose the pledge of the jewelry, and, in due course, secured a decree recognizing the pledge and ordering the sale thereof to satisfy said indebtedness, as will more fully appear from the certified copy of the record of said chancery court made part of his exception of res judicata.

Plaintiff thereupon filed a plea of estoppel alleging that as defendant had filed a certified copy of the proceedings in Mississippi wherein it was charged that plaintiff and her husband were residents of the city of New Orleans, and wherein it was judicially admitted that the jewelry was the property of the plaintiff, he was estopped and precluded from questioning the domicile of the plaintiff or the ownership of the jewelry, and that the contentions set up by defendant, to the effect that the contract was a Mississippi contract which must be governed by the laws of Mississippi, and that there was no impediment in the nature of marital disability existing under the laws of that state had been determined adversely to said defendant when the cause was before this court on the appeal from the judgment sustaining the exception of lis pendens.

The trial judge took the view that plaintiff and her husband were domiciled in the city of New Orleans at the time the contract was entered into, and whether so or not, the contract, so far as the surety was concerned, was a Louisiana contract to be governed by the laws of Louisiana, and he, accordingly, rendered judgment in favor of plaintiff, ordering that the jewelry be returned. From this judgment defendant has appealed.

It is not disputed that the pledged jewelry is the separate property of the plaintiff. This is admitted by the averments of defendant's answer, by the allegations of the bill of complaint filed in the proceedings in Mississippi, and is also established by the uncontradicted testimony of plaintiff herself.

[1, 2] Under his plea of res judicata, defendant contends, however, that the decree of the chancery court in Mississippi, by virtue of the full faith and credit clause of the federal Constitution, operates as a complete bar to the prosecution of this suit by the plaintiff. This contention was disposed of adversely to defendant in the previous decision of this court. 147 La. 930, 86 South. 365, wherein this language is used:

"Inasmuch as a judgment declaring that Mrs. Lorio had capacity to bind herself and to pledge her personal property to secure a debt of her husband would be a personal judgment against her, it cannot be said that the chancery court of Harrison county, Miss., has jurisdiction of that question, without a voluntary appearance by Mrs. Lorio in that court. It is certain that a judgment rendered by default against Mrs. Lorio, in the proceeding instituted by Gladney in the chancery court of Harrison county, Miss., declaring that she had capacity to bind herself and her separate property for her husband's debt, would not be a valid judgment against her."

It is urged on behalf of plaintiff that the plea of res judicata was not before the court on the previous appeal and that the quoted language is purely obiter dictum. It is true the court was considering the effect of the plea of lis pendens and not the effect of the plea of res judicata when it expressed its conclusions as hereinabove referred to; but if the proceedings in the Mississippi court and in the Louisiana court, conceding it to be between the same parties, was not

for the same object and did not grow out of the same cause of action, as this court so found and held, so as to constitute lis pendens, by the same reasoning the decree of the Mississippi court does not constitute res judicata as against the proceedings in the Louisiana court.

The proceeding in the Mississippi court was quasi in rem which could not result in a valid and jurisdictional decree in personam against either Mr. or Mrs. Lorio. The object of the present suit, as was said in our previous opinion, "is to establish Mrs. Lorio's alleged ownership of the jewelry, or in the alternative, to obtain a personal judgment against Mr. Gladney for its value," and to ascertain whether the wife "could obligate herself as surety for the debt of her husband or validly hypothecate her separate property to secure his debt." This issue was not and could not have been determined without Mr. and Mrs. Lorio's voluntary appearance in the Mississippi court. A judgment which does not determine the rights of the parties is not res judicata. Cox v. Von Ahlefeldt, 105 La. 543, 30 South. 175.

In our previous opinion herein we said, at page 932 of 147 La., at page 366 of 86 South.:

"It is admitted that Mr. Gladney and Mr. and Mrs. Lorio are. and were when the contract of pledge was made, residents of the city of New Orleans, where the contract was made and signed."

Defendant does not deny that this admission was made on. the trial of lis pendens, but claims it was restricted to that plea. If Mr. and Mrs. Lorio were residents of New Orleans for the purpose of that plea, they were residents of New Orleans for all purposes. The testimony, however, shows that the admission was based upon the facts.

[3] After the contract of pledge was signed, Mr. Gladney took the pledged jewelry into Harrison county, Miss., and delivered it to his Mississippi attorney, who kept it in his safe until the sale thereof under the decree of the Harrison county court, at which sale Mr. Gladney became the purchaser after which he brought the property back to the city of New Orleans, locking it up for safekeeping in his bank box there. It is true that Mr. Gladney testifies he had a residence in Mississippi and a business office in that state, but the evidence establishes absolutely and beyond the peradventure of a doubt that his domicile and principal place of business was in the city of New Orleans, where he owned a home on a prominent avenue and where he possessed a bank box in which he placed his valuables for safekeeping. If he had a valid pledge he could have exercised that pledge in Louisiana as well as in Mississippi and with less formality, less inconvenience, and less expense. The irresistible conclusion is that the removal of the jewelry to Mississippi was a palpable attempt to evade and defeat the jurisdiction of the Louisiana court over a contract made in Louisiana in contravention of its prohibitory laws with the object and purpose of foreclosing upon the pledge under the laws of a state permitting such action.

Counsel for defendant has cited a number of cases in support of the plea of res judicata, and of the argument that full faith and credit must be given by the Louisiana courts to the decree of the Mississippi court. In all of these cases, save one, it appears that the judgment debtor was regularly cited or voluntarily appeared. The case in which this does not so appear is Hanley et al. v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242, 29 L. Ed. 535. In that case, however, the issue was as to the effect of a judgment rendered under the law of Pennsylvania against two parties, one of whom had been personally cited and the other of whom had not been served with process. The court held that the judgment rendered against Charles and John Donoghue was valid and enforceable

against Charles as he had been served with process in that state, and void against John, who had not been served with process, but had been brought into court by means of a foreign attachment.

The only theory upon which courts have upheld or given effect to substituted or constructive service is that in such cases the property is brought under the control of the court by seizure or some other process. This theory is founded upon the presumption that the property is in the possession of and under the control of its owner, and that any action taken against it will come to his knowledge, and that he will be in a position to protect his interests. In the present case Mrs. Lorio had parted with the possession and control of her property, vesting it, for the time being, in Mr. Gladney, with at least the implied, if not the explicit, understanding that it was to remain in the state of Louisana where it was at the time of the execution of the pledge.

If the contention of the defendant was to be upheld, any resident of Mississippi could come into Louisiana, obtain the pledge of a wife's separate property to secure her husband's debt, in contravention of the law of this state, remove the property to the state of his residence, and there subject it to the obligations of the illegal contract. Not only this, but any resident of Louisiana holding in pledge the separate property of a wife to secure her husband's debt can take the property to Mississippi and there foreclose his pledge in utter disregard of the provisions of the Louisiana law striking such contract with nullity. This court cannot sanction any such forced and unnatural construction of the law governing the contract involved in this suit.

It is claimed by defendant that as Mr. and Mrs. Lorio were not domiciled in Louisiana, the wife is not entitled to the benefit of the statutes prohibiting her from pledging her property for her husband's debts for the reason that those statutes in their operation are purely personal to the citizens of the state.

[4] The domicile of the wife is the domicile of the husband, and, if it is established that the husband was domiciled in Louisiana, it follows that the wife was also domiciled here.

[5] The residence of Mr. and Mrs. Lorio in Louisiana is admitted, and while residence of itself does not constitute domicile, it is one of the important elements in determining the question of domicile vel non.

It is shown by the record that the domicile of origin of Mr. Lorio was Louisiana. He was born in the parish of East Baton Rouge in this state, and thereafter removed with his family to the city of New Orleans, where he remained until he found it to his advantage in the prosecution of his profession, to go to Mexico, where he spent 15 years in working on various sugar plantations in that country and in the city of Vera Cruz. His vacations were spent with his family in the city of New Orleans. He was married in the city of El Paso, Tex., in the year 1904. When the revolution broke out in Mexico, he returned to New Orleans, where he secured employment with the Foundation Company and with the firm of Haubtman & Loeb. He left this employment when he leased the Glad Oak Hotel in Mississippi. He remained in Mississippi for a little over five months, when he gave up the lease, returning to New Orleans, where he again secured employment with the firm of Haubtman & Loeb, and, finally, went back to Mexico as the representative of his said employers.

There is not only nothing in the record which shows, or from which the inference can be drawn, that Mr. Lorio ever went to Mexico with the thought or intention of making that country his permanent home,

or of establishing his permanent domicile there, abandoning or forfeiting the domicile of his birth; but, on the contrary, he distinctly and unequivocally testifies that he desires to live in New Orleans and fix his domicile there because his family lives there, some have died there, and that he spent the greater part of his own life in said city. When interrogated, on cross-examination, as to, "Where is located the place you call home, to which being absent therefrom your tendency is to evermore return?" His answer was: "That the city to which the witness wishes to return is New Orleans in the United States."

[6] It is certain that Mr. and Mrs. Lorio were not living in Mexico when the contract with Mr. Gladney was entered into. If they had ever been domiciliated in that country, they forfeited that domicile when they left there because of the revolution, with no intention of ever returning. They were not domiciled in Mississippi and they were not domiciled in Mexico, and as it is a well-settled principle of law that no one is deemed without a domicile, it would logically follow that the domicile of Mr. and Mrs. Lorio, at the time of the contract, was the city of New Oreans where they were then residing, and to which they had originally returned with the intention of making it their permanent home.

[7] The burden of proving the change of domicile of Mr. and Mrs. Lorio from Louisiana to Mexico was upon the defendant. Succ'n of Franklin, 7 La. Ann. 395; Le Blanc v. Loughridge, 95 South. 419,[1] recently decided by the court. This burden defendant has not successfully discharged.

[8] In view of the provisions of the law of this state prohibiting a married woman from binding herself or her property for her husband, or conjointly with him, for debts contracted, or for obligations incurred by him, and from mortgaging or pledging her separate property for a debt or obligation of the marital community the contract entered into between Mr. Gladney and Mrs. Lorio, purporting to create a pledge of the jewelry of the latter, to secure her husband's debts or obligations, is illegal, null and void, and of no effect. The judgment appealed from, therefore, is correct.

Judgment affirmed.

DAWKINS, J., dissents for the reason he does not think the evidence shows plaintiff to have had a domicile in this state.