ANNA A. URDANETA, Petitioner, *v.* ASDRUBAL URDANETA, Respondent.

Domestic Relations Court of New York, Family Court, New York County, October 7, 1942.

*Ralph Bosch* for petitioner.

*Harold S. Goodman* for respondent.

POLIER, J. The respondent and the petitioner entered this country in 1939 as husband and wife. The President of the United States issued an exequatur to the respondent as Vice-Consul of Venezuela on January 3, 1939. The parties continued to live together as husband and wife until the respondent abandoned the petitioner while they were residing together in the city of New York. The evidence clearly establishes that he did so without cause or justification through any conduct on her part.

After adequate support, voluntarily given during the early months following the abandonment, the respondent on successive occasions substantially reduced his contributions toward the petitioner's support.

In May, 1942, the petitioner brought an action for separation against the respondent in the United States District Court for the Southern District of New York, and made a motion for alimony and counsel fees. On the return of this motion, the respondent appeared specially to attack the jurisdiction of the court under the decision of *Popovici* v. *Agler* (280 U. S. 379,

[1930]). · That case came before the Supreme Court on a writ of certiorari following the denial of a writ of prohibition to the Vice-Consul of Roumania in an action brought by his wife for divorce and alimony in the State courts of Ohio. There as in the instant case the wife first sought action in the appropriate Federal District Court. In affirming the action taken by the Ohio State courts, Justice HOLMES, writing for the court, stated that although the language in the Constitution of the United States (art. III, § 2) and in the Judicial Code (Act of March 3, 1911, ch. 231, §§ 24, 233, 256; U. S. Code, tit. 28, §§ 41, 341, 371) was sweeping in the exclusive jurisdiction granted to the Federal Courts in matters affecting ambassadors, ministers and consuls of foreign governments:

"* * * like all language it has to be interpreted in the light of the tacit assumptions upon which it is reasonable to suppose that the language was used. It has been understood that, 'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States,' * * * and the jurisdiction of the Courts of the United States over divorces and alimony has always been denied. * * * If when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States, there is no difficulty in construing the instrument accordingly and not much in dealing with the statutes. 'Suits against consuls and vice-consuls' must be taken to refer to ordinary civil proceedings and not to include what formerly would have belonged to the ecclesiastical Courts.'' (*Popovici* v. *Agler, supra,* 383, 384.)

In the instant case the motion to dismiss the action was granted by the United States District Court for want of jurisdiction of the subject-matter and an order was so entered with the consent of counsel for both parties on May 26, 1942.

The petitioner then instituted an action in the Supreme Court of the State of New York, county of New York, for a separation. On a motion for alimony and counsel fees *pendente lite,* the respondent again appeared specially in a cross-motion attacking the jurisdiction of the court. The respondent's motion to dismiss the complaint was granted on the ground that neither party was domiciled here, and an order dismissing the complaint was entered on July 16, 1942.

Following the dispositions of the actions in the United States District Court and the Supreme Court of the State of New York, the wife filed a petition for support in the Domestic Relations

Court of the City of New York. The husband again appeared specially to attack the jurisdiction of the court, relying on the exclusive jurisdiction given to the Federal courts under the Constitution and the Act of March 3, 1911 in matters affecting ambassadors, ministers and consuls. New York cases were cited to sustain this contention. Examination of the cases, however, reveals no case in point. Most of the cases cited refer either to civil actions (*Valarino* v. *Thompson,* 7 N. Y. 576 [1853]; *Davis* v. *Packard,* 7 Pet. [32 U. S.] 276 [1833]; *Sippile* v. *Albites,* 5 Abb. Pr. [N.S.] 76 [1868]; *Naylor* v. *Hoffman,* 22 How. Pr. 510 [1862]), or to criminal actions (*Savic* v. *City of New York,* 203 App. Div. 81 [1922]; *People* v. *Savitch,* 116 Misc. Rep. 531 [1921]) outside the field of domestic relations. In *Higginson* v. *Higginson* (96 Misc. Rep. 457 [1916]), the court dismissed an action for separation against the Vice-Consul of Peru, and indicated that the District Court was the appropriate forum. Since that decision was rendered the United States Supreme Court in *Popovici* v. *Agler* (*supra*) has held that the immunity extended to consuls and vice-consuls by the Constitution and the Act of 1911 does *not* extend to matters of domestic relations between husband and wife.

In one of the cases cited by counsel for the respondent (*Valarino* v. *Thompson, supra*) the court stated: "Nobody denies the liability of a consul to be sued in a civil action." The exclusion of the State courts from jurisdiction has been held not to apply to the domestic relations of husband and wife. (*Popovici* v. *Alger, supra.*) In the instant case the petitioner sought jurisdiction in the United States District Court and the complaint was dismissed, so that the respondent is in no position to claim that such court is or may be the appropriate forum.

Under the rules controlling jurisdiction in the Supreme Court of New York, the parties must be domiciled in New York in a separation action. That requirement is not essential to jurisdiction in the Domestic Relations Court of the City of New York. Section 103 of the Domestic Relations Court Act of the City of New York, enacted by chapter 761 of the Laws of 1942, provides that: " A husband * * * may be required to furnish support or may be found guilty of non-support * * * if, (a) he * * * is residing or domiciled in the city at the time of the filing of the petition for support, or (b) he * * * is not residing or domiciled in the city but is found therein, provided that the petitioner is so residing or domiciled at the time of the filing of the petition for support and is so residing

or domiciled at the time of the issuance of the summons or warrant; or (c) he * * * is neither residing nor domiciled nor found in the city but prior to the time of the filing of the petition for support and, while so residing or domiciled, he * * * shall have failed to furnish such support or he shall have abandoned his wife * * * and thereafter shall have failed to furnish support, provided that the petitioner is so residing or domiciled at the time of the filing of the petition for support.''

The petitioner and respondent were both residing in the city at the time the petition was filed. This court therefore has jurisdiction.

The evidence established that the respondent had abandoned the petitioner, and that he had terminated all support for a period of time prior to the filing of the petition for support. The petitioner had no means or resources of her own, and, if it had not been for the bounty of friends and relatives, might well have become a public charge. The petitioner is entitled to support in accordance with the means of the respondent and the circumstances of both parties. (N. Y. City Domestic Relations Court Act, § 92, subds. [1], [3].) The respondent receives a salary of $300 per month at the present time. He testified that, due to war conditions, he no longer receives additional payments for the clearance of ships.

Sound public policy cannot permit that a man should abandon his wife without cause in this city, and seek to avoid total immunity for her support on the ground that he is a consul of a foreign government. The Constitution, the statutes and the decisions do not indicate that such immunity was ever intended.

The respondent is found chargeable with the support of the petitioner in accordance with his means and the circumstances of both parties. The respondent is hereby ordered and directed to pay into this court the sum of ninety dollars monthly each and every month, beginning on October 17, 1942, for the support of the petitioner, until further order of the court.