JgDOWNING, J.
Leda Salvatierra appeals an adverse judgment in which the trial court ruled that the state lacked subject matter jurisdiction to hear her action for divorce and ancillary matters where she and her husband enjoy diplomatic status in the United States. The trial court ruled, as a matter of law, that Mrs. Salvatierra could not establish a domicile in this state for divorce purposes. The overarching legal question presented here is whether a foreign national present in this country under a diplomatic visa may establish domicile in this state for purposes of a divorce. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.
*152 FACTS AND PROCEDURAL HISTORY
Gonzalo Calderon (Gonzalo) and Leda Salvatierra (Leda) are citizens of Costa Rica. They were married on June 2, 1988 in Costa Rica. In 1998, Gonzalo was appointed to serve a four-year term as the Consul General of Costa Rica. The consulate office is located in New Orleans, but Gonzalo represents Costa Rica in six states. In August 1998, Gonzalo came to live in Louisiana under an A-l diplomatic visa that would expire along with his appointment on June 20, 2002, unless renewed. Leda, as his spouse, enjoys the same status. Leda joined Gonzalo in Louisiana in April 1999. The couple purchased a home in St. Tammany Parish on April 9, 1999.
Gonzalo abandoned the St. Tammany Parish residence in December 2000. On February 26, 2001, Leda filed a Petition for Divorce under LSA-C.C. art. 102. She also asked for spousal support and for partition of their community property. Gonzalo filed a declinatory exception raising the objection of lack of subject matter jurisdiction alleging the parties were not domiciled in Louisiana. The trial court rendered judgment sustaining the exception. The trial court, however, found the court had in rem jurisdiction |3to issue a preliminary injunction enjoining Gonzalo from transferring, moving, disposing of, alienating, and/or encumbering community assets within this state.
Leda’s assignments of error allege that the trial court erred by finding that the parties were not domiciled in Louisiana and, therefore, dismissing the suit for divorce, partition of community property, and other demands set out in the petition for divorce. Leda also alleges that the trial court erred by dismissing her demand for spousal support when the record established that the court had jurisdiction over the person of Gonzalo.
Gonzalo’s answer to appeal alleges three assignments of error asserting that the trial court erred by issuing a preliminary injunction regarding the community assets because the trial court did not have subject matter jurisdiction. Gonzalo further alleges that the trial court erred in granting an injunction since Leda did not file an in rem proceeding against property owned by Gonzalo and, therefore, is not entitled to in rem relief. Gonzalo’s final assignment of error alleges that the trial court erred by issuing a preliminary injunction in an in rem proceeding against property owned by the Consul General for the Republic of Costa Rica because all civil actions, other than divorce, are reserved exclusively to the U.S. District Courts.
DIPLOMATIC IMMUNITY FROM DIVORCE ACTION
The trial court found that unlike average foreign nationals, Leda and Gonzalo were “here on a diplomatic mission” and, therefore, had a special status that exempted them from either suing or being sued in state court.
In State of Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (U.S.Ohio 1930), however, the United States Supreme Court determined that the Vice Consul of Roumania was subject to suit in state 1 ¿court in an action brought by his wife against him for divorce and alimony. The vice consul argued that because of his diplomatic immunity, he was immune from suit brought in state court pursuant to the provisions of 28 U.S.C.A. § 1351. The Court rejected this argument. As explained by Justice Oliver Wendell Holmes, “when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters *153 reserved to the States,.... ‘Suits against consuls and vice-consuls’ must be taken to refer to ordinary civil proceedings and not to include what formerly would have belonged to the ecclesiastical Courts.” In summation, Justice Holmes stated “[i]n the absence of any prohibition in the Constitution or laws of the United States, it is for the State to decide how far it will go.” Popovici, 280 U.S. at 383-384, 50 S.Ct. at 155. Popovici is still the controlling Supreme Court precedent in this area.
Justice Holmes stated in Popovici that even though the U.S. Supreme Court has jurisdiction in all eases affecting ambassadors, other public Ministers and Consuls, exercise of this jurisdiction has always been denied over divorces and alimony. Popovici, 280 U.S. at 382-383, 50 S.Ct. at 154-155. Justice Holmes then quoted Plaquemines Tropical Fruit Co. v. Henderson, 170 U.S. 511, 18 S.Ct. 685, 42 L.Ed. 1126 (U.S.La.1898), which held that words quoted from the Constitution do not of themselves, and without more, exclude the jurisdiction of the State. He further stated that, “[t]he statutes do not purport to exclude the State Courts from jurisdiction except where they [statutes] grant it to the Courts of the United States. Therefore they [statutes] do not affect the present case if it be true as has been unquestioned for three-quarters of a century that the Courts of the | ¡¡United States have no jurisdiction over divorce.” Popovici, 280 U.S. at 383, 50 S.Ct. at 155.
We cannot find any Louisiana cases directly on point. However, domestic relation controversies among foreign consuls and their families are not unique in other jurisdictions. In Minnesota, the state court found in State v. Flores, 197 Minn. 590, 268 N.W. 194 (1936), that it had jurisdiction over a paternity action against a Costa Rican diplomat. The Flores court ruled that the whole field of domestic relations, including actions against a foreign national, was reserved to the states. Id. at 194. In Duran-Ballen v. Duran-Ballen, 180 Misc. 750, 40 N.Y.S.2d 617, (1943), the court found that the federal statute giving federal courts exclusive jurisdiction of suits against consuls did not deprive New York of jurisdiction to issue a declaratory judgment against the Vice Consul of Ecuador declaring void his purported Mexican “mad order” divorce decree. The Duran-Ballen court ruled that federal courts have repeatedly declared that under existing laws they may not entertain jurisdiction over causes affecting domestic relations. Id. at 619. In the instant case, the domestic relations issue between husband and wife belong to the laws of the states and not to the laws of the United States. Id. at 619.
Accordingly, the trial court erred in concluding that it did not have subject matter jurisdiction over a domestic relations suit against a party because of his diplomatic status.
DOMICILE
The trial court ruled that Leda’s diplomatic status in the country precluded her from establishing a domicile in Louisiana. When the trial court found that it had no subject matter jurisdiction over the matter, it ^dismissed the action and, accordingly, did not make factual findings as to whether or not Leda had otherwise established domicile.
The term “citizen” used in the definition of “dqmicile” is not synonymous with citizenship of the United States. See State v. Fowler, 41 La.Ann. 380, 6 So. 602 (1889). Under Louisiana law, “a person becomes a citizen of this state when he becomes a resident of this state.” Sturm v. Hutchinson, 37 So.2d 45, 48 (La.App. 1 Cir.1948).
*154 Domicile is defined in LSA-C.C. art. 38 as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which .he makes his habitual residence; if he resides' alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
There appears to be no Louisiana jurisprudence regarding whether or not a person’s status as a non-immigrant alien can preclude him from establishing a domicile within this state such that the jurisdictional and venue requirements for divorce can be met. Persuasive authority is, however, found in a May 16, 1945 Louisiana Attorney General opinion to Mr. Nelson Parks, the American Consul in Matamoros, Mexico. In pertinent part, the opinion reads as follows:
Since we can find nothing in either the Statutes or Constitution of this State which deny an alien the right to appear in Court and stand in judgment, we must conclude that the proceedings in the case in question were entirely right and not in violation of any prohibitory law.
It can not be questioned that a citizen of the United States would have a right to institute proceedings against an alien to enforce rights claimed by him and in the absence of a law to the contrary, it must be assumed that an alien is entitled to the same rights and privileges. Attorney General of Louisiana Opinion dated May 16,1945 on p. 6.
17Louisiana’s Constitution protects persons, not citizens. Article I § 22 of the Louisiana Constitution provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
The trial court erred in finding that Leda could not establish a domicile in this state. Non-immigrant visitors and tourist, who are issued temporary visas, including aliens on a diplomatic-mission, are not precluded from establishing a domicile within a state so as to maintain a divorce action. See State of Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (U.S.Ohio 1930); Dimalanta v. Dimalanta, 1983 WL 30222 (D.Guam A.D.1983); Das v. Das, 254 N.J.Super. 194, 603 A.2d 139 (Ch.1992); Williams v. Williams, 328 F.Supp. 1380 (D.C.V.I.1971). We, therefore, conclude that the trial court committed legal error in its interpretation of the pertinent law. Leda’s status as a non-immigrant, admitted to our country under an A-l status visa, does not preclude her from becoming a domiciliary of Louisiana,
LEDA’S DOMICILIARY STATUS
Leda’s diplomatic status is not an impediment to her establishing domicile in Louisiana. The trial court did not address the issue of whether or not Leda met the requirements of establishing a domicile in St. Tammany Parish. Since the record appears complete on this issue and both parties address this issue in their appellate briefs, we will review the record de novo to determine if the facts support Leda’s change of domicile from Costa Rica to St. Tammany Parish, Louisiana. As we observed in Brett v. Brett, 2000-0436 (La.App. 1 Cir. 5/30/01), 794 So.2d 912; writ *155 denied 2001-2283 (La.11/16/01), 802 So.2d 611:
| ¡Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Id. at 915.
Accordingly, from the record we review whether Leda established domicile in St. Tammany Parish. Domicile is an issue of fact to be determined on a case-by-case inquiry. Pattan v. Fields, 95-1936, p. 8 (La.App. 1 Cir. 9/26/95), 669 So.2d 1233, 1238. A person’s domicile of origin continues until another is acquired. Blackwell v. Blackwell, 606 So.2d 1355, 1358 (La.App. 2 Cir.1992). A change in domicile requires the physical presence of the individual in the new domicile coupled with a present intent to permanently reside in the new domicile. Blackwell, 606 So.2d at 1358. Proof of intent to change domicile is governed by LSA-C.C. arts. 42 and 43. Intention to change domicile is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove. LSA-C.C. art. 42. In case this declaration is not made, the proof of this intention shall depend upon circumstances. LSA-C.C. art. 43.
The party seeking to show his domicile has changed must overcome the legal presumption that it has not been changed. Sheets v. Sheets, 612 So.2d 842, 844 (La.App. 1 Cir.1992). See also Pattan, 95-1936 at p. 8, 669 So.2d at 1238. However, LSA-C.C.P. art. 10B establishes a specific presumption concerning domicile in actions for annulment and divorce. If a spouse has established and maintained a residence in a parish of this state for a period of six months, there shall be a rebuttable presumption that he has a domicile in this state in the parish of such residence. LSA-C.C.P. art. 10B. Residence of itself does not constitute domicile, but it has been one of the |9important elements in determining the question of domicile. Lorio v. Gladney, 153 La. 993, 1002, 97 So. 16, 19 (1923). “A person’s domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place.” Davis v. Glen Eagle Ship Management Corp., 97-0878, p. 1 (La.App. 4 Cir. 8/27/97), 700 So.2d 228, 230. A person can have several residences, but only one domicile. Id. The party seeking to show that his or another party’s domicile has changed has the burden of proving the change. Pattan, 95-1936 at p. 8, 669 So.2d at 1238.
Gonzalo argues that Leda did not meet her burden of proof to show that she was domiciled in St. Tammany Parish by purchasing a residence and residing temporarily in that parish. Gonzalo maintains that he never intended to establish a domicile in Louisiana. Gonzalo testified that he is a Costa Rican citizen and intends to remain a Costa Rican citizen. Gonzalo argues that he is in this country on a temporary basis and can be removed or transferred at any time. Gonzalo argues that there is a legal presumption that a man and his wife have the same domicile and strong proof must be offered to overcome that presumption, citing Laborde v. LIGA, 95-1122, p. 5 (La.App. 3 Cir. 3/6/96), 670 So.2d 614, 617.
This argument is misplaced under LSA-C.C.P. art. 10B. Leda and Gonzalo established and maintained a residence in St. Tammany Parish for more than 6 months, a rebuttable presumption exists that they have established a domicile there. We *156 examine the record to determine if Gonzalo has successfully rebutted the presumption that Leda has established her domicile in St. Tammany Parish.
Gonzalo also points out that Leda still owns property in Costa Rica, maintains a law practice in Costa Rica, is listed in the telephone book in Sanj^Jose, Costa Rica, and that the phone is still connected at her firm. He also testified that all but one of her children live in Costa Rica and Leda visits them often. Gonzalo testified that Leda never liked living in Louisiana and never expressed a desire or intent to stay and that she still owns a residence in Costa Rica. He also testified that both he and Leda listed their address in Costa Rica as their residence on the U.S. visa application.
We conclude that it is of little moment that Leda still has a telephone listing her as an attorney in Costa Rica. Leda testified that she has closed her files and concluded all of her legal business in Costa Rica and is now retired. Leda explained that the phone in Costa Rica is still connected because her daughter is also an attorney and keeping an established listing is advantageous for her daughter’s business. Leda also testified that, although she has a small residential property in Costa Rica, it is merely a rental and brings in a small income. Leda testified that she and Gonzalo intended to stay in Louisiana permanently and that is the reason they spent $191,000 on a home[2] in St. Tammany shortly after arriving in the United States. While the presumption of original domicile continues until fixed elsewhere, whenever a person has acquired a residence elsewhere and actually resides there this will be presumed to be his domicile. Successions of Rhea, 227 La. 214, 227, 78 So.2d 838, 842 (1955). Leda further testified that she opened a business enterprise here. The acts and conduct of the parties speak louder than words when it comes to a determination of domicile. Id. at 228, 78 So.2d at 842.
The primary residence address being recorded as Costa Rica by Leda on her visa application is at first blush, troubling. However, a similar situation was discussed in Williams v. Williams, 328 F.Supp. 1380 (D.C.V.I.1971. The Williams court stated that “[e]ven assuming the least favorable situation, where an alien has misrepresented his true intent at the time he was granted entry to the country, the fact that he may be illegally in the country and deportable would not preclude him from forming an actual intent to make his home here.” Id. at 1383. Thus, ample jurisprudence establishes that domicile in a state for purposes of obtaining a divorce does not depend on the nature of the visa upon which the alien entered the country, the alien’s status under the United States’ immigration laws, nor the alien’s expressed intent to return to his country as stated on his application for a visa. See Abou-Issa v. Abou-Issa, 229 Ga. 77, 189 S.E.2d 443 (1972); Nicolas v. Nicolas, 444 So.2d 1118 (Fla.App. 3 Dist.1984); Babouder v. Abdennur, 41 Conn.Supp. 258, 566 A.2d 457 (1989). In Alves v. Alves, 262 A.2d 111 (D.C.App.1970), an alien who came to the United States to assume a position with an international company as a foreign officeholder was allowed to establish a domicile for the purpose of obtaining a divorce. The Alves court said:
A visa is a document of entry required of aliens by the United States Government and is a matter under the control *157 of the Government. It has little relevance to the question of domicile. Alves, 262 A.2d at 115.
Our review of the record supports that Gonzalo failed to rebut the presumption that Leda’s principal domicile is in St. Tammany Parish. We conclude that under the totality of circumstances including Leda’s maintaining a physical presence in the state as evidenced by the purchase of, and residing in, a home in Louisiana, combined with having a business in Louisiana, together with her stated declarations of an intent to establish a domicile within this state, that Leda has thus satisfied the requirements of |1?,LSA-C.C. art. 38. We, therefore, find, that Leda has established domicile in St. Tammany Parish.
LEDA’S INTERIM SPOUSAL SUPPORT
Leda’s next assignment of error alleges that the trial court erred by dismissing her demand for interim spousal support as the record established that the court had jurisdiction over the person of Gonzalo.
We agree. Married persons owe each other fidelity, support, and assistance. LSA-C.C. art. 98. This Court has held that the purpose of interim alimony is to provide support temporarily, pending litigation, for the spouse who does not have sufficient income to maintain the status quo insofar as the economic circumstances of the marriage are concerned. Brazan v. Brazan, 93-2369, pp. 7-8 (La.App. 1 Cir. 6/24/94), 638 So.2d 1176, 1181.
Gonzalo argues that since he has diplomatic immunity, he must come under federal jurisdiction. We disagree for reasons stated above. We agree with the ruling in Urdaneta v. Urdaneta, 179 Misc. 95, 37 N.Y.S.2d 601 (N.Y.Dom.Rel.Ct.1942), which held the following:
Sound public policy cannot permit that a man should abandon his wife without cause in this city, and seek to avoid total immunity for her support on the ground that he is a consul of a foreign government. The Constitution, the statutes and the decisions do not indicate that such immunity was ever intended. Urdaneta, 37 N.Y.S.2d at 604.
This assignment of error has merit apart from our conclusion that the trial court has subject matter jurisdiction that extends to issues ancillary to the divorce. Because we have found jurisdiction over the matter, this case is remanded to the trial court for further proceedings in accordance with this decision.
JjjGONZALO’S ANSWER TO APPEAL
The trial court enjoined Gonzalo from transferring, moving, disposing of, alienating, or otherwise encumbering any of the assets of the community of acquets and gains existing between Gonzalo and Leda that are located in the State of Louisiana.
Gonzalo’s answer to appeal asserts three assignments of error concerning how the trial court erred in enjoining him from “transferring, moving, disposing of, alienating, or otherwise encumbering any of the assets of the community ... existing between Gonzalo Calderon and Leda Iris Sal-vatierra which are located in the State of Louisiana.” Specifically, Gonzalo alleges that the trial court erred by issuing a preliminary injunction when the court did not have subject matter jurisdiction to handle the divorce action; that the trial court erred in granting Leda’s request for injunction because Leda did not file an in rem proceeding against the property; and by proceeding in rem against property owned by the Consul General of Costa Rica.
*158 As discussed above, however, the trial court does have jurisdiction over the divorce and ancillary proceedings, and, as such, has authority to issue an injunction to protect Leda’s interest in the community property located in Louisiana. See Imperial v. Hardy, 302 So.2d 5, 8 (La.1974); also see LSA-C.C.P. art. 2592.
This assignment of error is without merit. The ruling of the trial court on this issue is affirmed.
CONCLUSION
For the foregoing reasons: (1) the trial court judgment sustaining Gonzalo’s peremptory exception raising the objection of lack of jurisdiction over the subject matter of the action is reversed and judgment is rendered in |ufavor of Leda and against Gonzalo overruling the exception; (2) the trial court judgment granting the injunction is affirmed; and (3) this action is remanded to the trial court for further proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed to Gonzalo Calderon.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.

. The St. Tammany Parish property was repossessed for non-payment before this suit was filed.