839 So.2d 448 (2003)
Randall FREDERIC
v.
ZODIAC DEVELOPMENT.
No. 2002 CA 1178.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
Rehearing Denied March 24, 2003.
*450 Victor Marcello, Gonzales, Counsel for Plaintiff/Appellee Randall Frederic.
Daniel Atkinson, Baton Rouge, Counsel for Defendants/Appellants Zodiac Development and Mohammed Shamma.
Nan Landry, Lafayette, Counsel for Defendants/Appellants Five Corners CGU Insurance Co., Norman Bacon and James Brooks.
Todd Delcambre, Lafayette, Counsel for Defendant/ Appellee IntervenorZurich North Am. Ins.
Before: KUHN, DOWNING, and GAIDRY, JJ.
KUHN, J.
Defendants-appellants, Zodiac Development, a Joint Venture (Zodiac Development), Five Korners, L.L.C. (Five Korners), Norman Bacon, James Brooks, Mohammed M. Shamma, and American Employers Insurance Company,[1] appeal a judgment overruling exceptions raising the objections of lack of personal jurisdiction over nonresident, Shamma, and improper venue. For the reasons that follow, we affirm.

PROCEDURAL AND FACTUAL BACKGROUND
According to the allegations of the petition instituting this lawsuit, on October 9, 2000, Randall Frederic, an employee of Capitol City Glass, and his coworker, Jason Austin, were on the job at the Essen Centre, replacing a plate glass panel which, pursuant to the terms of the job, was retrieved out of the building stock. Assisting the Capitol City Glass employees was James Brooks, who worked on behalf of Zodiac Development, the owner of the Essen Centre building. Frederic and Brooks jointly held vertically-stacked panels as Austin attempted to locate a piece of wood to slide out the replacement glass panel from the stack. Brooks received a call on his mobile phone from his supervisor Norman Bacon and stepped to the side to operate the phone, releasing his hold on the stack of glass. As a result, the entire stack, which allegedly weighed about 1800 pounds, fell on Frederic, causing him severe injuries.
Frederic filed a petition for damages in Ascension naming as defendants: Brooks; Brook's supervisor and Essen Centre building manager, Bacon; the Essen Centre building owner, Zodiac Development; and the partners of Zodiac Development: Five Korners, a Louisiana limited liability corporation, and Shamma, an individual who resides in Cincinnati, Ohio. Defendants filed a declinatory exception raising an objection of improper venue. And Shamma filed a declinatory exception of lack of personal jurisdiction.[2] After a *451 hearing, the trial court overruled the exceptions, and defendants appealed.[3]

DISCUSSION
Louisiana's Long-Arm Statute, which is set forth in La. R.S. 13:3201, provides the circumstances under which a Louisiana court may exercise personal jurisdiction over a nonresident. And a cause of action described in La. R.S. 13:3201 may be instituted in the parish where the plaintiff is domiciled. La. R.S. 13:3203.
We initially that note in this appeal, defendants have raised no assertions challenging the applicability of La. C.C.P. art. 73, which permits, among other things, an action for the recovery of damages for an offense or quasi-offense against joint or solidary obligors to be brought in the parish where the plaintiff is domiciled if the parish of plaintiff's domicile would be a parish of proper venue against any defendant under R.S. 13:3203.[4]
In overruling the exception objecting to improper venue raised by all defendants, the trial court applied La. R.S. 13:3203 and C.C.P. art. 73 and concluded that the district court in Ascension Parish had personal jurisdiction over nonresident Shamma under Louisiana's Long-Arm Statute. Thus, on appeal of the judgment overruling their exception objecting to improper venue, defendants initially challenge the trial court's determination on Shamma's *452 exception raising the objection of lack of personal jurisdiction.
Appellate courts conduct a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Spomer v. Aggressor Intern., Inc., XXXX-XXXX, p. 4 (La.App. 1st Cir.9/28/01), 807 So.2d 267, 271, writ denied, 2001-2886 (La.1/25/02), 807 So.2d 250. Under La. R.S. 13:3201, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the Louisiana Constitution and the Constitution of the United States. Therefore, the limits of La. R.S. 13:3201 and the limits of constitutional due process are coextensive, and the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. A & L Energy, Inc. v. Pegasus Group, XXXX-XXXX, p. 4 (La.6/29/01), 791 So.2d 1266, 1270.
The due process test requires that in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); de Reyes v. Marine Mgmt. and Consulting, 586 So.2d 103, 105 (La.1991). In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction"general" and "specific." A state exercises general jurisdiction when the defendant's contacts with the state are not related to the lawsuit. Specific jurisdiction, on the other hand, is exercised when the suit arises out of or is related to the defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984); Spomer, XXXX-XXXX at p. 5, 807 So.2d at 271. The two-part minimum contacts/fairness analysis applies to the assertion of specific as well as general jurisdiction. de Reyes, 586 So.2d at 109.
When a forum seeks to exercise specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful minimum contacts is satisfied when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries arising out of or related to those activities. Id. at 106. When the cause of action, however, does not arise out of the defendant's purposeful contacts with the forum, due process requires that the defendant be engaged in continuous and systematic contact to support the exercise of general jurisdiction. A & L Energy, Inc., XXXX-XXXX at p. 6, 791 So.2d at 1271. Contacts may be effected by mail and electronic communication, as well as physical presence. Spomer, XXXX-XXXX at p. 5, 807 So.2d at 272.
The second prong of the analysis is the fairness of the assertion of jurisdiction. The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Once the plaintiff meets the burden of proving minimum contacts, a presumption of reasonableness of jurisdiction arises, and the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum *453 contacts with the forum. Spomer, XXXX-XXXX at p. 6, 807 So.2d at 272. In determining this issue, the court must examine the defendant's burden in litigating in the forum state, the forum state's interest, the plaintiff's interest in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the state's shared interest in furthering fundamental social policies. Asahi Metal Indust. Co. v. Superior Court, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).
In this case, the evidence shows that on the date of Frederic's injuries, Zodiac Development was a joint venture partnership formed under the laws of Louisiana of which eighty percent was owned by Five Korners and twenty percent by Shamma. The principal place of business, according to the version of the Articles of Partnership in effect on October 9, 2000, the date of Frederic's injuries, was the Essen Centre Building (5353 Essen Lane, Baton Rouge, LA 70809). The same version of the partnership articles, in a section entitled, "Rights and Powers of Joint Venturers," stipulated, "Shamma is authorized on behalf of the Venture to do, perform and oversee" the administrative and managerial functions necessary or appropriate for the business of Zodiac Developments.
Zodiac Development partner, Five Korners, is a Louisiana limited liability corporation that on October 9, 2000, was owned by Shamma and three of his children. According to the Initial Report of Five Korners, the registered office for the limited liability corporation was Suite 650 of the Essen Centre Building (5353 Essen Lane, Baton Rouge, LA 70809). And Shamma was the duly-authorized manager of Five Korners insofar as its participation in the Zodiac Development partnership.
Because under La. C.C. art. 2801 a partnership is a juridical person, distinct from its partners, nonresident Shamma urges that jurisdiction over the partnership does not necessarily confer jurisdiction over the individual partners. He maintains that he has never lived in Louisiana or engaged in any business other than his partnership interest in Zodiac Development, which he describes as merely "an investment." Shamma characterizes the address at the Essen Centre used in the Zodiac Development and Five Korners documents as only "a correspondence address."
In the deposition testimony admitted into evidence, Shamma admitted that the administrative and managerial functions were assigned to him in the Zodiac Development partnership articles. Although he pointed out that the articles permitted him to delegate many of the details of the day-to-day operations of the Essen Centre building, Shamma conceded that, acting on behalf of Zodiac Development, he had entered into a contractual arrangement with Bacon to manage the building. The contract between Zodiac Development and Bacon designated Bacon as an "independent contractor." But Shamma admitted, pursuant to the independent contract arrangement, Bacon reported directly to him in the chain of command for Zodiac Development.
The specific powers expressly set forth in the Zodiac Development Articles of Partnership that Shamma retained subsequent to his delegation of authority to Bacon included selling property, borrowing money in the name of the joint venture partnership, and making distributions to the partners. Shamma's delegation to Bacon (and to a Louisiana Certified Public Accountant) of express duties assigned to him in the Zodiac Development Articles of Partnership included payment and preparation of federal and state taxes and maintenance of the books, accounts, and records of Zodiac Development. Bacon, who *454 according to Shamma was delegated responsibility for payment of all the expenses arising from the day-to-day expenditures necessary to operate Essen Centre, was given a signatory power on the Zodiac Development checking account from which payments were made. But Shamma retained a signatory power for the Zodiac Development account and received copies of the bank statements. Although keeping copies of the leases of the office space in Essen Centre were the responsibility of Bacon, he was required to consult with Shamma before negotiating the terms of any lease agreement, and final leases were signed by Shamma in the capacity of "Landlord," on behalf of Zodiac Development.
Shamma stated that subsequent to construction of the Essen Centre in 1989, he came to Louisiana no more than three or four times a year to tend to his investment interest in Zodiac Development. At the deposition, Shamma was unable to recall the frequency of his non-physical contact with Bacon, i.e., conversations engaged in by telephone and other electronic means. But he testified that he could be talking with Bacon as often as "twice a day" when they were negotiating the lease of office space. Although adamant that the location was merely for correspondence purposes, Shamma conceded that 5353 Essen Lane, Suite 650, which was the address he used in the Five Korners documentation provided to the Louisiana Secretary of State, was the operating office for Bacon.
According to the allegations of Frederic's lawsuit, Shamma's fault in this lawsuit is the result of his act or omission in the hiring and overseeing of office building manager Bacon, which may include the delegation of power and responsibility to incompetent personnel as well as Shamma's alleged failure to provide Bacon, and those to whom Bacon delegated, with proper work instructions and safety procedures. Shamma could reasonably anticipate that respondeat superior claims would be asserted against him about his activities in Louisiana as the Zodiac Development agent bearing final responsibility for the managerial and administrative functions of a building in which an invited guest was injured. See e.g., Hughes v. Goodreau, 2001-2107 (La.App. 1st Cir.12/31/02), 836 So.2d 649, (principal held liable for actions of its independent contractor agents). These connections between Shamma and Zodiac Development, a Louisiana partnership, as well as Shamma's interactions through telephonic and other electronic communications with Zodiac Development agent Bacon, sometimes as often as "twice a day," clearly evince that nonresident Shamma was the person in the chain of command responsible for the managerial and administrative functions of Zodiac Development. The totality of the contacts between Shamma and Louisiana convinces us Shamma "purposefully availed [himself] of the privilege of conducting activities within the forum state," both directly, through his contacts with Zodiac Development, and indirectly, through his agent, Bacon. The nature and extent were such that he could "reasonably anticipate being haled into court in the forum state." Based on the allegations of Frederic's petition, we find that this suit arises out of and/or is related to Shamma's contacts with Louisiana.
We also find that through his involvement in the negotiations of the office leases at the Essen Centre, particularly his representation of Zodiac Development in the capacity of Landlord, Shamma engaged in continuous and systematic contact with the State of Louisiana so as to satisfy Frederic's burden of proof.
The exercise of personal jurisdiction over these defendants under the facts *455 of this case would not offend traditional notions of fair play and substantial justice. Nonresident Shamma used Louisiana lawyers to create Five Korners, a Louisiana limited liability corporation. Nonresident Shamma then entered into a joint venture partnership, formulated under the laws of Louisiana, with Louisiana resident Five Korners. Shamma has offered no evidence showing that litigation of this matter in Louisiana would be a hardship. Almost all the evidence necessary for the trial of this matter is located in Louisiana. And the contract between Frederic's employer and Zodiac Development that placed plaintiff on the Essen Centre premises was executed in Louisiana.
When a nonresident has deliberately engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum as well. de Reyes, 586 So.2d at 106. We find Shamma has failed to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice so as to overcome the presumption of reasonableness of jurisdiction shown by Frederic. The trial court's overruling of Shamma's exception of personal jurisdiction was correct.
Because defendants raise no other contentions challenging the trial court's conclusion that Ascension Parish is a correct venue under La. R.S. 13:3203, through La. C.C.P. art. 73, we find the overruling of defendants' exception objecting to venue is also correct.

DECREE
For the reasons articulated, the trial court's judgment overruling the declinatory exception objecting to personal jurisdiction raised by Shamma and that objecting to venue raised by all the defendants is affirmed. All costs of this appeal are assessed against defendants, Zodiac Development, a Joint Venture (Zodiac Development), Five Korners, L.L.C. (Five Korners), Norman Bacon, James Brooks, Mohammed M. Shamma, and American Employers Insurance Company.
AFFIRMED.
NOTES
[1] While the petition names "CGU Insurance Company" as a defendant, "American Employers Insurance Company" is the only insurer-defendant to have joined in the declinatory exception objecting to venue.
[2] Although all defendants filed the exception objecting to the court's personal jurisdiction over nonresident defendant Shamma, only Shamma is a proper party to raise this declinatory defect. See A & P Boat Rentals, Inc. v. American Lloyd's, 592 So.2d 1361, 1364 (La. App. 1st Cir.12/27/91). Therefore, in this appeal, we consider the exception only insofar as it has been raised by Shamma.
[3] The overruling of the declinatory exception objecting to venue is generally considered an appealable judgment because although it is interlocutory (i.e., it does not determine the merits but only preliminary matters in the course of the action, see La. C.C.P. art. 1841), it is one that may cause irreparable harm. See La. C.C.P. art.2083; see also A & P Boat Rentals, Inc., 592 So.2d at 1362, which cites Herlitz Constr. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981)(noting irreparable injury occurs if any ruling cannot as a practical matter be corrected on appeal and stating as an example that once the trial court overrules an exception to venue and the case is tried on the merits in the wrong venue, an appellate court has no practical means of correcting the error on appeal) Cf. Brown v. Drillers, Inc., 401 So.2d 366, 367 (La.App.1981)(after this court, finding no showing of irreparable harm, declined to review a judgment overruling objection of improper venue under La. R.S. 13:3203, supreme court remanded, ordering us to rule on the merits). We note the venue objection arises out of, is intertwined with, and dependent upon the trial court's interlocutory ruling on the exception of lack of personal jurisdiction over nonresident Shamma under Louisiana's Long-Arm Statute, La. R.S. 13:3201. Thus, in this context, where the basis for venue in Ascension Parish is the exercise of jurisdiction over a nonresident defendant under La. R.S. 13:3201 and La. C.C.P. art. 73, we find irreparable harm has been shown since on appeal this court lacks any practical means of correcting an error of the trial court in overruling the exceptions. Therefore, the appeal is proper under La. C.C.P. art.2083.
[4] Although not briefed, at oral arguments defendants suggested that the trial court erred in concluding that Frederic was domiciled in Ascension Parish. A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place. Salvatierra v. Calderon, XXXX-XXXX (La.App. 1st Cir.10/2/02), 836 So.2d 149. A person can have several residences, but only one domicile. Id. Domicile is an issue of fact to be determined on a case-by-case inquiry. Id. Based on Randall Frederic's testimony at the hearing, ample support exists for the trial court's factual finding that plaintiff was domiciled in Ascension Parish at the time of the accident. Therefore, we find no manifest error in that determination. See Stobart v. State, 617 So.2d 880, 882-83 (La. 1993).