**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2024 CA 0208**

KEL-SEA ADVENTURES LLC

VERSUS

CONTENDER BOATS, INC. AND
GREAT AMERICAN INSURANCE GROUP

Judgment Rendered: **SEP 26 2024**

\* \* \* \* \* \*

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket No. 2022-0002767, Div. C

Honorable Erica W. Sledge, Judge Presiding

\* \* \* \* \* \*

Gino J. Rendeiro
David E. Kavanagh
New Orleans, Louisiana

Counsel for Plaintiff/Appellant
Kel-Sea Adventures LLC


Aaron B. Greenbaum
Salvador J. Pusateri
Kristian B. Dobard
New Orleans, Louisiana

Counsel for Defendant/Appellee
Contender Boats, Inc.


Christopher E. Carey
New Orleans, Louisiana

Counsel for Defendant/Appellee
Great American Insurance Group

\* \* \* \* \* \*

**BEFORE: McCLENDON, WELCH, AND LANIER, JJ.**

Concurs and Assigns reasons

**McCLENDON, J.**

Plaintiff-appellant, Kel-Sea Adventures LLC (Kel-Sea), appeals the trial court's judgment rendered in favor of defendant-appellee, Contender Boats, Inc. (Contender), sustaining Contender's objection of lack of personal jurisdiction and dismissing Kel-Sea's claims against Contender. The issue before this court is whether the assertion of personal jurisdiction by Louisiana over Contender complies with the limits of constitutional due process. Finding that it does not, we affirm.

## FACTS AND PROCEDURAL HISTORY

Defendant-appellee, Contender, a Florida corporation with its principal place of business in Homestead, Florida, designs and manufactures fishing vessels "solely in the State of Florida." The lawsuit underlying this appeal concerns a fishing vessel originally built by Contender for Intensity Offshore Outfitters, LLC (Intensity), a Louisiana limited liability company, and subsequently purchased from Intensity by plaintiff-appellant Kel-Sea, also a Louisiana limited liability company.

In February 2016, Josh Bodenheimer attended the Miami Boat Show in Miami, Florida, on behalf of Intensity. While at the Miami Boat Show, Mr. Bodenheimer made contact with representatives of Contender and placed an order for the purchase of a fishing vessel. Contender manufactured the subject 2017 39' Contender 39ST fishing vessel, hull identification number: JDJ9V109F617 (the Vessel), solely within Florida. The work order, invoice, and supplemental invoice all reflected that the Vessel was to be sold to Intensity, located in Metairie, Louisiana, and shipped to Intensity, "F.O.B." Homestead, Florida.[1] After Intensity paid for the Vessel via a bank wire transfer directed to Contender's Florida bank account,[2] Contender made delivery of the Vessel to Intensity in Florida and issued a Limited Warranty Statement in favor of "the original . . . owner[]" of the Vessel.

---

[1] "FOB" is an abbreviation for "FREE ON BOARD[,]" a term which denotes that the seller's delivery is complete, and the risk of loss passes to the buyer, when the goods pass into the transporter's possession. See Black's Law Dictionary (12th ed. 2024). Stated differently, "F.O.B." means title is transferred at the time goods are delivered to the carrier. See **Lowe's Home Center, Inc. v. Kennedy**, 32,443 (La.App. 2 Cir. 10/27/99), 744 So.2d 711, 713.

[2] The original purchase price of the Vessel is redacted from the record.

2

Giving rise to the lawsuit underlying this appeal, Kel-Sea purchased the Vessel from Intensity for the price of $300,000.00 on or about July 31, 2018. After inspections of the Vessel allegedly revealed manufacturing defects, Kel-Sea filed a petition for damages in the 21st Judicial District Court in Tangipahoa Parish on September 12, 2022. The petition alleged the Vessel "sustained severe and permanent damages as a result of manufacturing and/or design defects and/or manufacturing inadequacies through normal and foreseeable use," which rendered the Vessel a "constructive total loss." Continuing, the petition alleged Kel-Sea sustained economic damages from loss of the use of the Vessel and the resulting loss of revenue. The petition further alleged that Contender, as the Vessel's manufacturer, and Great American Insurance Group, as Kel-Sea's insurer for damages and losses sustained due to marine perils, were liable to Kel-Sea pursuant to the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, as well as theories of negligence and breach of contract/warranty. Kel-Sea did not name Intensity as a party to the underlying lawsuit.

Contender responded to Kel-Sea's petition on January 13, 2023.[3] Contender filed an answer, a declinatory exception pleading the objection of lack of personal jurisdiction, a peremptory exception pleading the objection of no cause of action, and a peremptory exception pleading the objection of no right of action.[4] Of these exceptions, only Contender's exception of lack of personal jurisdiction is at issue in this appeal. In that regard, Contender asserted that it was a Florida corporation, with a principal place of business in Florida, and built boats solely in Florida; that it had no offices, employees, or property in Louisiana; and that all of the activity related to the manufacture of the Vessel, as well as the sale and delivery of the Vessel to the original purchaser, occurred in Florida. Maintaining that these contacts with Louisiana did not constitute sufficient minimum

---

[3] Great American Insurance Group also answered the petition and asserted exceptions and defenses, but is not a party to this appeal.

[4] Louisiana Code of Civil Procedure article 922 recognizes three exceptions: the declinatory exception, the dilatory exception, and the peremptory exception. At issue in this appeal is a declinatory exception raising the objection of the court's lack of jurisdiction over the person of the defendant. See LSA-C.C.P. art. 925(A)(5). Herein, for brevity, we refer to same as an exception of lack of personal jurisdiction. Likewise, we refer to the peremptory exceptions raising the objections of no cause of action and no right of action as exceptions of no cause and no right of action. See LSA-C.C.P. art. 927(5) and (6).

3

contacts to subject Contender to personal jurisdiction in Louisiana, Contender sought dismissal of Kel-Sea's claims.

Kel-Sea opposed Contender's exceptions in a memorandum filed on April 27, 2023. Regarding the exception of lack of personal jurisdiction at issue herein, Kel-Sea argued Contender had established minimum contacts with Louisiana because Contender was registered to do business in Louisiana and had maintained long-term authorized dealer relationships with boat dealerships in Louisiana. Thus, Kel-Sea maintained Contender had benefitted from "a substantial physical presence in Louisiana . . . through the sales and service of its vessels and through the significant activities of its authorized dealer agents" in Louisiana for many years, including the period of time when the Vessel was built.

Contender filed a reply memorandum in support of its exceptions on June 8, 2023, specifically addressing the arguments Kel-Sea raised in its opposition memorandum.[5] Contender conceded that it was registered to do business in Louisiana and previously had an authorized dealership relationship with a Louisiana boat dealership, but denied that Contender or its authorized dealer directed any activity into Louisiana related to the original purchase of the Vessel. Rather, Contender argued the original purchaser, Intensity, unilaterally brought the Vessel into Louisiana, and Contender and its authorized dealer had no involvement in Intensity's subsequent sale of the Vessel to Kel-Sea. Contender concluded, "having an authorized dealer in Louisiana or previously selling products in Louisiana does not subject a foreign entity to the equivalent of 'general' jurisdiction in Louisiana for a product sold and delivered in another state."

Contender's exception of lack of personal jurisdiction, as well as Contender's exceptions of no cause and no right of action, came for hearing before the trial court on June 12, 2023. During the hearing, Contender's exceptions, Kel-Sea's memorandum in opposition, and Contender's reply brief were offered, filed, and introduced into evidence. Various exhibits were attached to the exceptions, memorandum in opposition to the exceptions, and the reply brief. After taking the matter under advisement, the trial court

---

[5] At the outset of the hearing, Kel-Sea orally moved to strike Contender's reply memorandum on the basis that it was not timely filed. The trial court denied the oral motion to strike. Kel-Sea does not challenge this ruling on appeal.

4

issued written reasons for judgment on June 20, 2023, granting the exception of lack of personal jurisdiction as follows:

> With regard to the Exception of Lack of Personal Jurisdiction, it is undisputed that there was no activity directed into Louisiana by Contender concerning the [Vessel] in question. Specifically, all actions associated with the initial sale of the [Vessel] at issue, including delivery and taking possession of the [Vessel], occurred in Florida. All vessel design and manufacturing occurred in Florida. Therefore, general jurisdiction is necessary for the matter to proceed in this forum.

> Here, Contender inarguably has some contact with the State of Louisiana. Perhaps most significantly, Contender previously had an authorized dealer in the State of Louisiana which sold and repaired Contender vessels. Further, Contender was authorized to do business within the State. However, the corporation has never owned or operated any facilities or physical assets within the State nor has Contender maintained a bank account within the State or had an employee within the State. Counsel for Plaintiff submitted several editions of *Marlin* magazine and *InTheBite* magazine which contain Contender advertisements, and counsel submits that these were forwarded to Louisiana residents. However, both magazines are Florida publications. Presumably, residents of any state could obtain a subscription to the publications.

> Overall, based upon the evidence submitted, the Court finds that Contender lacks minimum contacts with the State of Louisiana sufficient to establish jurisdiction pursuant to La. R.S. 13:3201. Contender's contacts with the State are simply insufficient to constitute minimum contacts to establish personal jurisdiction over Contender, and any assertion of jurisdiction by this Court would violate principles of fair play and substantial justice. Further, the Court finds no compelling or significant interest on behalf of the State in adjudicating the claims at issue.

The trial court signed a July 7, 2023 written judgment in conformity with its written reasons, which provides, in pertinent part:

> The Court took the matter under advisement and considering the arguments of counsel, memoranda submitted, evidence submitted, and applicable law[,] the Court finds that Contender Boats, Inc. lacks minimum contacts with the State of Louisiana sufficient to establish personal jurisdiction pursuant to La. R.S. 13:3201.

> ***

> **IT IS HEREBY ORDERED, ADJUDGED[,] AND DECREED** that the Declinatory Exception of Lack of Jurisdiction over the Person of the Defendant pursuant to Louisiana Code of Civil Procedure article 925(A)(5) filed on behalf of Contender Boats, Inc. be and is hereby GRANTED for the reasons set forth in the Reasons for Judgment issued on June 20, 2023.

> ***

> **IT IS FURTHER ORDERED, ADJUDGED[,] AND DECREED** that this matter . . . be and is hereby DISMISSED as to any claims against Contender Boats, Inc. due to lack of personal jurisdiction over the defendant, Contender Boats, Inc., without prejudice, with each party to bear its own costs.

5

From this judgment, Kel-Sea appealed.[6]

## STANDARD OF REVIEW

In reviewing a judgment on an exception of lack of personal jurisdiction, appellate courts apply the manifest error standard of review to the factual findings underlying the judgment. The application of established rules of law to the facts, however, is a legal question, and thus, the legal issue of personal jurisdiction over a nonresident by a Louisiana court is subject to *de novo* review. **Bridges v. Mosaic Global Holdings, Inc.,** 2008-0113 (La.App. 1 Cir. 10/24/08), 23 So.3d 305, 314, <u>writ denied</u>, 2008-2783 (La. 2/20/09), 1 So.3d 496.

## LAW

The Louisiana long-arm statute, LSA-R.S. 13:3201(B), provides that a court of this State may exercise personal jurisdiction over a nonresident on any basis consistent with the Louisiana Constitution and the Constitution of the United States. Therefore, the limits of LSA-R.S. 13:3201 and the limits of constitutional due process are coextensive, and the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the due process requirements. **Frederic v. Zodiac Development**, 2002-1178 (La.App. 1 Cir. 2/14/03), 839 So.2d 448, 452.

The constitutional due process test, which was first enunciated in **International Shoe Co. v. State of Washington**, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), is two-pronged: the first prong requires that a nonresident defendant have certain "minimum contacts" with the forum state, and the second prong requires that maintenance of the suit not offend traditional notions of fair play and substantial justice. <u>See</u> **Bridges**, 23 So.3d at 314-315.

The first prong of the constitutional due process test, *i.e.*, the "minimum contacts" test, is satisfied by a single act or actions by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, such that the nonresident should reasonably anticipate being

---

[6] Originally, Kel-Sea filed a Notice of Intention to Seek Supervisory Writs. On review, this court observed that the July 7, 2023 judgment granting the exception of lack of personal jurisdiction and dismissing Kel-Sea's claims against Contender was a final, appealable judgment pursuant to LSA-C.C.P. art. 1915(A)(1). Thus, in an action dated November 6, 2023, this court granted Kel-Sea's writ for the limited purpose of remanding the matter to the trial court with instructions to grant Kel-Sea an appeal.

haled into court in the forum state. See **Bridges**, 23 So.3d at 315. The "purposeful availment" requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person other than the defendant. See **Asahi Metal Industry Co., Ltd. v. Superior Court of California**, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

The second prong of the constitutional due process test considers the fairness of the assertion of jurisdiction. Once minimum contacts are established, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." **Bridges**, 23 So.3d at 315. When the plaintiff meets the burden of proving minimum contacts, a presumption of reasonableness of jurisdiction arises. The burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum. **Bridges**, 23 So.3d at 315.

In elaborating on the constitutional due process test set forth in **International Shoe**, 326 U.S. 310, the Supreme Court's decisions have recognized two types of personal jurisdiction: general jurisdiction, sometimes called "all-purpose" jurisdiction, and specific jurisdiction, sometimes called "case-linked" jurisdiction. **Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County**, 582 U.S. 255, 262, 137 S. Ct. 1773, 1779-80, 198 L. Ed. 2d 395 (2017). A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the state are so "continuous and systematic" as to render them essentially at home in the forum state. Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation. **Goodyear Dunlop Tires Operations, S.A. v. Brown**, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011). In other words, when a forum seeks to exercise specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful minimum contacts is

satisfied when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries arising out of or related to those activities. **Frederic v. Zodiac Development**, 2002-1178 (La.App. 1 Cir. 2/14/03), 839 So.2d 448, 452. The two-pronged connotational due process analysis applies regardless of whether a state asserts general or specific jurisdiction. See **Frederic**, 839 So.2d at 452.

General Jurisdiction

We first consider whether Contender's contacts with Louisiana are sufficient to subject it to the general personal jurisdiction, or "all-purpose" jurisdiction, of Louisiana's courts. See **Bristol-Myers**, 582 U.S. at 262. The Supreme Court has issued only a few cases addressing general jurisdiction since **International Shoe**, 326 U.S. 310. See **Daimler AG v. Bauman**, 571 U.S. 117, 129, 134 S. Ct. 746, 755, 187 L. Ed. 2d 624 (2014). Of these, **Perkins v. Benguet Consolidated Mining Co.**, 342 U.S. 437, 448, 72 S.Ct. 413, 96 L.Ed. 485 (1952), remains the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." **Daimler**, 571 U.S. at 129. In **Perkins**, 342 U.S. at 438, a company incorporated in the Philippines was found to be subject to general personal jurisdiction in Ohio, because Ohio was the corporation's principal, though temporary, place of business. After the company's operations in the Philippines were completely halted during World War II, the president, who was also the general manager and the principal stockholder, moved to Ohio. There, the president kept an office, maintained company files, and oversaw company activities. The Supreme Court concluded that the foreign corporation, through its president, "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business," and the exercise of general jurisdiction over the Philippine corporation by an Ohio court was "reasonable and just." **Perkins**, 342 U.S. at 438.

In contrast, in **Helicopteros Nacionales de Colombia, S.A. v. Hall**, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984), the Supreme Court determined that Texas could not exercise personal jurisdiction over a Colombian corporation after the corporation's helicopter crashed in Peru, killing four U.S. citizens. In **Helicopteros**, the corporation's contacts with Texas included sending its chief executive officer to Houston

8

for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from a helicopter company in Fort Worth for substantial sums; and sending personnel to the Fort Worth helicopter company for training. **Helicopteros**, 466 U.S. at 416. The Supreme Court found these contacts did not resemble the continuous and systematic general business contacts previously found to warrant general jurisdiction in **Perkins**, 342 U.S. at 448, writing, "mere purchases, even if occurring at regular intervals, are not enough" to warrant personal jurisdiction in a cause of action not related to the purchases. **Helicopteros**, 466 U.S. at 418.

In **Goodyear**, 564 U.S. 915, the Supreme Court considered whether foreign subsidiaries of a United States parent corporation were amenable to suit in state court on claims unrelated to any activity of the subsidiaries in the forum state. **Goodyear**, 564 U.S. at 918. In that case, after two boys from North Carolina were killed in a bus accident outside Paris, the boys' parents brought a wrongful death suit in North Carolina state court alleging that the bus's tire was defectively manufactured. The Goodyear parent corporation, as well as Goodyear's Turkish, French, and Luxembourgian subsidiaries, were named as defendants. While the foreign subsidiaries manufactured tires for sale in Europe and Asia, their only affiliation with North Carolina was that a small percentage of the tires they manufactured were distributed in North Carolina. **Goodyear**, 564 U.S. at 921. Considering the facts of **Goodyear** in light of **Perkins** and **Helicopteros**, the Supreme Court found Goodyear's foreign subsidiaries were "in no sense at home in North Carolina." Thus, the foreign subsidiaries' attenuated connections to North Carolina "[fell] far short of the 'the continuous and systematic general business contacts' necessary to empower North Carolina to entertain suit against them on claims unrelated to anything that connects them to the State." **Goodyear**, 564 U.S. at 929. Similar to **Goodyear**, in **Daimler**, 571 U.S. 117, the Supreme Court found that a foreign defendant was not subject to jurisdiction in California for claims "involving only foreign plaintiffs and conduct occurring entirely abroad." **Daimler**, 571 U.S. at 120.

More recently, in **BNSF Railway Co. v. Tyrrell**, 581 U.S. 402, 413, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017), the Supreme Court considered whether Montana's

exercise of personal jurisdiction over a railroad doing business in Montana, but not incorporated or headquartered there, comported with due process. **BNSF**, 581 U.S. at 407. Although BNSF had "over 2,000 miles of railroad track and more than 2,000 employees in Montana[,]" the Supreme Court noted that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." Rather, the inquiry requires "an appraisal of a corporation's activities in their entirety[,]" because a corporation that operates in many places "can scarcely be deemed at home in all of them." **BNSF**, 581 U.S. at 414. Thus, the Supreme Court considered BNSF's contacts with Montana in the context of all of BNSF's business activities, which it conducted in twenty-eight states. After determining that these contacts amounted to about 6% of BNSF's total track mileage and less than 5% of its total work force, the Supreme Court found that BNSF was not so heavily engaged in activity in Montana as to render it at home there. See **BNSF**, 581 U.S. at 407-414. Although these contacts were sufficient to subject BNSF to personal jurisdiction in Montana on claims related to its business in Montana, the Supreme Court found that, under **Daimler** and **Goodyear**, BNSF's in-state business was not sufficient to permit the assertion of general jurisdiction over the claims at issue, which were unrelated to any activity occurring in Montana. See **BNSF**, 581 U.S. at 407-414.

With these precepts of general jurisdiction in mind, we consider the evidence Kel-Sea offered in support of its arguments that Contender is subject to personal jurisdiction in Louisiana. Kel-Sea relied primarily on the affidavit of Jimmy Fisackerly, the general sales manager of Boat Stuf, one of the Louisiana boat dealers with which Contender previously had an authorized dealership relationship. Mr. Fisackerly attested that Boat Stuf offers sales and repair services to boats and small fishing vessels at four Louisiana locations: Harvey, Slidell, Port Sulphur, and Hammond. According to Mr. Fisackerly, Boat Stuf became an authorized dealer of Contender Boats in Louisiana beginning in 1995,[7] and the relationship between Contender and Boat Stuf continued for approximately fifteen years before ending around 2010. Mr. Fisackerly further attested that during Boat

_____

[7] We note that Kel-Sea sometimes states that Contender's activities in Louisiana began in 2005 rather than 1995. However, as both 1995 and 2005 pre-date the initial sale of the Vessel at issue, it is not significant whether Contender's activities in Louisiana began in 1995 or 2005.

Stuf's dealership relationship with Contender, Boat Stuf sold approximately ten to twenty Contender boats per year in Louisiana, for a total of approximately two hundred new Contender vessels, and generated hundreds of thousands of dollars[8] in revenue in the State of Louisiana; Boat Stuf attended boat shows in Louisiana, where Contender's products were viewed by the Louisiana public; Boat Stuf provided warranty repairs as well as other repairs to Contender vessels while the vessels were in Louisiana; and Boat Stuf participated in advertising campaigns, which included listing Contender's boats and vessels for sale in Louisiana. Finally, Mr. Fisackerly attested that, after 2010, the authorized dealer relationship was transferred from Boat Stuf to Bent Marine, and "to the best of [his] knowledge, the relationship between Contender and Bent Marine ... lasted approximately [nine] years," during which "it is believed many new and/or used Contender vessels were sold in Louisiana."

In addition to Mr. Fisackerly's affidavit, Kel-Sea offered several magazine advertisements it referenced during the hearing of the exception of lack of personal jurisdiction.[9] The magazine advertisements were included in the March 2023 edition of *InTheBite*, and the June-July 2022, March 2023, and June-July 2023 editions of *Marlin*. Except for the June-July 2023 edition of *Marlin*, which lacked an address sticker, the magazines were addressed to be delivered to New Orleans addresses. In all four magazine advertisements, the Contender advertisement consisted of a photograph depicting individuals and Contender boats, brief advertising language, and the contenderboats.com web address. The advertisements did not reference Boat Stuf or Bent Marine, nor did they contain any reference to Louisiana.

In objecting to Kel-Sea's assertion that Contender was subject to personal jurisdiction in Louisiana, Contender offered numerous exhibits, including a copy of its Annual Report filed with the Florida Secretary of State, which reflected that Contender was incorporated in Florida and its principal place of business was located in Homestead,

---

[8] Kel-Sea sometimes states that Contender's sales amounted to hundreds of thousands of dollars, and at other times, states that Contender's sales amounted to millions of dollars.

[9] Kel-Sea also offered the affidavit of its counsel, Gino J. Rendeiro. However, Contender filed a motion to strike Mr. Rendeiro's affidavit. Based upon agreement of counsel, Mr. Rendeiro withdrew the affidavit at the beginning of the hearing. The trial court's July 7, 2023 judgment noted that this "moot[ed]" Contender's motion to strike. The parties do not raise the issue of this affidavit on appeal.

Florida; a certified copy of Contender's February 16, 2011 Application for Authority to Transact Business in Louisiana, together with Contender's January 1, 2022 Application for Withdrawal of a Foreign Corporation, both filed with the Louisiana Secretary of State; and Contender's Foreign Corporation Annual Report for the period ending on March 4, 2021, which reflected that Contender's mailing address and principal business office as 1820 SE 38 Avenue, Homestead, Florida 33035.

In Mr. Neber's first affidavit, regarding Contender's general contacts with Louisiana, Mr. Neber attested that no Louisiana resident had any ownership interest in Contender. Mr. Neber further attested that Contender had never and does not currently have employees in Louisiana; owned or operate any facilities within Louisiana; owned or operated any physical assets within Louisiana; owned any real property in Louisiana; maintain, lease, or own a factory or storefront in Louisiana; or engaged in any direct solicitation of business in Louisiana, including advertisements in Louisiana publications. While Mr. Neber conceded that Contender previously had a registered office in Louisiana at the address of its registered agent for service of process, he attested "[n]o business was conducted on behalf of Contender at this address and this address was not a storefront." Mr. Neber further attested that Contender's application for withdrawal of authority to transact business in Louisiana remained pending at the time he executed his first affidavit. Additionally, Mr. Neber attested that Contender maintains a "strictly informational and promotional" website, http://contenderboats.com. According to Mr. Neber, the Contender website "catalogs most models and options for vessels[,]" but purchases could not be made through the website.

Contender offered a second affidavit executed by Mr. Neber on June 7, 2023, with Contender's reply brief (Mr. Neber's second affidavit). Therein, Mr. Neber attested that any dealer relationship with Bent Marine was terminated effective July 1, 2021, and that Contender does not currently have an authorized dealer of boats/vessels in Louisiana. A copy of the Dealer Cancellation Letter mailed by Contender to Bent Marine on November 4, 2021, was attached to Mr. Neber's second affidavit.

Considering the record as a whole, and remembering that Kel-Sea bore the burden of establishing minimum contacts, we agree with the trial court's conclusion that

Contender's contacts in Louisiana were not sufficient to warrant this State's exercise of general personal jurisdiction over Contender. See **Bridges**, 23 So.3d at 315. Because Louisiana is neither Contender's place of incorporation nor Contender's principal place of business, Louisiana can only exercise general personal jurisdiction over Contender if its affiliations with the State were so continuous and systematic as to render it "at home" in this State. Although there was a period of time when Contender was registered to do business in Louisiana, maintained an authorized dealership relationship with Boat Stuf and Bent Marine, and ran advertisements in magazines which were available to Louisiana residents, we find these contacts fall short of establishing continuous and systematic contacts with Louisiana necessary to warrant the exercise of general jurisdiction. See **Perkins**, 342 U.S. at 448.

Continuing, and considering Contender's contacts with Louisiana in light of more recent jurisprudence, we particularly take note of the Supreme Court's reiteration in **BNSF** that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts[,]" but rather, requires "an appraisal of a corporation's activities in their entirety[,]" because a corporation that operates in many places "can scarcely be deemed at home in all of them." See **BNSF**, 581 U.S. at 414. Here, neither party presented evidence establishing the significance of Contender's business in Louisiana within the context of Contender's business activities in its entirety. However, it is plain from Contender's exhibits, and Mr. Neber's affidavits in particular, that Contender designs and manufactures boats only in Florida. Although Contender runs advertisements in certain magazines, none of the advertisements suggest a reader contact Contender in Louisiana; to the contrary, the advertisements direct a reader to Contender's website, which is passive in nature because it does not allow users to make purchases and merely provides promotional and contact information regarding Contender and its products. See **Quality Design & Construction, Inc. v. Tuff Coat Manufacturing, Inc.**, 2005-1712 (La.App. 1 Cir. 7/12/06), 939 So.2d 429, 435. Accordingly, we find no merit in Kel-Sea's

13

argument that Contender is subject to the general personal jurisdiction of Louisiana's courts.[10]

Specific Jurisdiction

We next consider whether Contender's contacts with Louisiana were sufficient to subject it to the specific personal jurisdiction, or "case-linked" jurisdiction, of Louisiana's courts. See **Bristol-Myers**, 582 U.S. at 262. When a forum seeks to exercise specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful minimum contacts is satisfied when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries arising out of or related to those activities. **Frederic**, 839 So.2d at 452. Thus, in order for a state court to exercise specific jurisdiction, the suit must arise out of, or relate to, the defendant's contacts with the forum. **Bristol-Myers**, 528 U.S. at 262. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state. **Bristol-Myers**, 528 U.S. at 264. Stated differently, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction. **Bristol-Myers**, 528 U.S. at 262.

As noted by the trial court in its written reasons for judgment, "there was no activity directed into Louisiana by Contender concerning the [Vessel] in question[,]" and "all actions associated with the initial sale of the [Vessel] at issue," including "delivery and taking possession" and "[a]ll vessel design and manufacturing" occurred in Florida.

---

[10] Regarding Kel-Sea's argument that Contender's previous involvement in litigation in Louisiana's federal courts proves Contender has purposefully availed itself of the privilege of utilizing Louisiana's courts, we likewise find no merit. The question before this court is whether Louisiana can exercise personal jurisdiction over Contender in this case, under the facts and circumstances before us, not whether Louisiana could exercise personal jurisdiction in other cases.

Further, review of the federal court pleadings Kel-Sea offered in support of this argument establishes that both cases were factually and procedurally distinguishable from this matter. In **Heisser v. Contender Boats, Inc.**, No. 07-9777, 2009 WL 1309741 (E.D. La. May 7, 2009), the plaintiff filed suit in the Eastern District of Louisiana alleging defects in a Contender boat purchased through Boat Stuf during a boat show in New Orleans. Contender sought and obtained the dismissal of the plaintiff's claims for failing to prove his claims exceeded the jurisdictional threshold amount of $75,000. Regarding **Contender Boats v. Anadarko Petroleum Corporation, et al.**, No. 10-4208 (E.D. La. June 18, 2020), Kel-Sea offered a conditional transfer order reflecting that Contender's complaint was originally filed in the Southern District of Florida, Miami Division, before being transferred to the Eastern District of Louisiana due to "questions of fact that are common to the actions previously transferred to the Eastern District of Louisiana." See 28 U.S.C. § 1407 and Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation.

The only evidence offered by either party regarding the initial contact between Intensity and Contender, the construction of the Vessel, the initial purchase of the Vessel, and the delivery of the Vessel was contained in the January 13, 2023 affidavit of Joseph Neber, the President and owner of Contender since 1984, and in attachments thereto (Mr. Neber's first affidavit). In Mr. Neber's first affidavit, he attested as follows:

19. In February 2016, Josh Bodenheimer of Intensity Offshore Outfitters, LLC attended the Miami Boat Show in Miami, Florida, at which time he made contact with representatives of Contender concerning the purchase of a fishing vessel.

20. While at the Miami Boat Show in February 2016, Josh Bodenheimer of Intensity Offshore Outfitters, LLC wrote his initial order for a 39' Step Hull fishing vessel.

21. A Production Work Order was entered by Contender on April 13, 2016, for a 39' Step Hull fishing vessel to be sold to Intensity Offshore Outfitters, LLC, with delivery "F.O.B. Homestead, FL", meaning that Intensity Offshore Outfitters, LLC would take delivery of the vessel in Homestead, Florida. . . .

22. Contender then manufactured [the Vessel] solely within Florida.

23. An Invoice dated August 3, 2016, was issued by Contender to Intensity Offshore Outfitters, LLC for the sale of the Vessel. Delivery was again noted as "F.O.B. Homestead, FL". . . .

24. Intensity Offshore Outfitters, LLC then paid for the Vessel via a bank wire transfer directed to Contender's bank account in Florida.

25. The purchase and sale of the Vessel between Contender and Intensity Offshore Outfitters, LLC, did not involve any dealer, broker, agent, or third-party located within the State of Louisiana.

26. The Vessel was delivered to Intensity Offshore Outfitters, LLC in Homestead, Florida, where Intensity Offshore Outfitters, LLC took possession of the Vessel.

27. Contender was not involved in the transport of the Vessel to the State of Louisiana.

28. Contender provided a Limited Warranty Statement to Intensity Offshore Outfitters, LLC relating to the Vessel. . . The Limited Warranty Statement makes clear that it applies only to the original owner of the Vessel, which was Intensity Offshore Outfitters, LLC.

29. Contender has no record of a warranty claim having been made by Intensity Offshore Outfitters, LLC concerning the Vessel.

30. Contender has no record of Contender ever having performed maintenance or repairs on the Vessel in the State of Louisiana.

31. Contender has never directly sold any of its vessels to Kel-Sea Adventures, LLC.

32. Contender had no involvement concerning the purchase and sale of the Vessel as between Intensity Offshore Outfitters, LLC and Kel-Sea Adventures, LLC.

15

Thus, Mr. Neber's uncontradicted affidavit testimony plainly established the following: Mr. Bodenheimer, on behalf of Intensity, traveled to Florida, where he made contact with Contender and ordered the Vessel; Contender designed and built the Vessel in Florida; Intensity issued payment for the Vessel to Contender's bank account in Florida; Contender delivered the Vessel to Intensity in Florida; Contender was not involved in the transport of the Vessel to Louisiana; and Contender was not involved in Intensity's sale of the Vessel to Kel-Sea. Kel-Sea does not dispute these facts, nor does Kel-Sea allege any version of events in which any activity or occurrence related to the initial sale of the Vessel took place in Louisiana. Further, Kel-Sea does not allege that Contender's authorized dealers in Louisiana were involved in the initial sale of the Vessel to Intensity, the subsequent sale of the Vessel to Kel-Sea, or any repairs to the Vessel. Accordingly, the record contains ample support establishing that Contender did not direct any activity into Louisiana concerning the Vessel, and that all activity associated with the initial sale, manufacture, and delivery of the Vessel occurred in Florida.

Applying the established rules of law to these facts, we find that specific jurisdiction does not exist in this matter. As set forth above, in order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." **Bristol-Myers**, 582 U.S. at 262, citing **Goodyear**, 564 U.S. at 919 (internal quotation marks and brackets omitted). In the absence of such a connection, specific jurisdiction does not exist, regardless of the extent of a defendant's unconnected activities in the state. See **Bristol-Myers**, 582 U.S. at 264. In this matter, Contender did not direct any activities regarding the Vessel into Louisiana and there is nothing to establish that this litigation resulted from alleged injuries arising out of or related to any activities Contender "purposefully directed" at Louisiana residents. See **Frederic**, 839 So.2d at 452. Moreover, the record reflects that the Vessel arrived in Louisiana solely as the result of the unilateral activity of the original purchaser, and Kel-Sea does not allege otherwise. Contender cannot be made subject to Louisiana's jurisdiction on the basis of such unilateral activity. See **Agape Broadcasters Inc. v. Estate of Sampson through Matix**, 489 F. Supp. 3d 550, 556 (W.D. La. 2020). This is true even considering the

16

stream-of-commerce doctrine, which permits a state to exercise personal jurisdiction over a non-resident defendant who delivers products into the stream-of-commerce with the expectation that they will be purchased by consumers in the forum state. Under the stream-of-commerce doctrine, once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a product to a distant state, without more, is insufficient to confer personal-jurisdiction over the manufacturer or distributor. See **Agape**, 489 F. Supp. 3d at 557. Here, the Vessel was purchased and delivered to the original purchaser in Florida. Intensity's subsequent decision to bring the Vessel into Louisiana and sell it to Kel-Sea does not render Contender subject to personal jurisdiction in this State. Accordingly, we find no merit in Kel-Sea's assertions that the Contender is subject to specific personal jurisdiction in Louisiana.

## CONCLUSION

For the foregoing reasons, the July 7, 2023 judgment dismissing the claims of Kel-Sea Adventures LLC, against Contender Boats, Inc., for lack of personal jurisdiction, is affirmed. Costs of this appeal are assessed against Kel-Sea Adventures LLC.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0208

KEL-SEA ADVENTURES LLC

VERSUS

CONTENDER BOATS, INC. AND GREAT AMERICAN INSURANCE GROUP

**LANIER, J., concurring.**

I believe Contender has sold enough boats to Louisiana residents in the recent past to still be within the stream of commerce, deriving a significant financial benefit from Louisiana residents and creating minimum sufficient contacts for Louisiana to have personal jurisdiction over Contender; however, the plaintiff did not provide sufficient evidence of such. Therefore, respectfully, I am constrained by the evidence submitted in this case to concur in the result.